Parker C. J.
The St. 1787, c. 54, § 1, provides, “that there shall be erected, built or otherwise provided by the Court of General Sessions of the Peace, in every county within this commonwealth, at the charge of such county, a fit and convenient house or houses of correction ” &c.
The object of this statute is of importance, and its execution, if neglected, cannot be overlooked by this Court, upon proper application to their authority.
*444 Such an establishment seems to be essential to the maintenance of the wholesome discipline of the laws, and it is obvious, from the language of the statute, that the legislature ^ nQt jntenc] that the proper subjects of restraint and discipline in a workhouse or house of correction should be committed to the county gaol, any longer than while these houses of correction were preparing for their reception. Ten years after the passing of the statute before mentioned, another was enacted (1797, c. 62) which is founded upon the supposed actual existence of such houses of correction, for it provides for the government thereof, and in the third section is the important provision, that lunatics and mad persons should be therein confined. Now it is obvious that such unhappy persons ought not to be committed to the gaol, which is a place of punishment for crime, and yet it is equally clear that the safety of the community will not admit of their going at large ; the legislature therefore have wisely ordained that they shall be restrained and secured in houses of correction.
Again, in St. 1802, c. 22, the legislature enact important provisions in relation to houses of correction, with regard to the means of labor, and the description of persons to be therein employed, presupposing that the inhabitants of every county had performed their duty in establishing such houses.
With such a series of legislative enactments before us, we are not at liberty to believe that the duty of providing such houses by the Court of Sessions is not imperative. The words of the first statute are mandatory, and there is no discretion given to the Sessions upon the subject, except that they are to be allowed a reasonable time to execute this duty. Now it appears by the answer filed by the justices of the Court of Sessions of this county, that more than twelve years have passed since its establishment, and that no measures have been taken to execute this duty imposed by the laws on that court. Nor do we see any sufficient excuse for its non-performance in the statement given of the expenses which the county has sustained, or in the pres ent state of its finances. Every community which upon its own application is incorporated into a distinct body politic, *445 must be presumed to be capable of sustaining all the burdens which the general laws impose upon such communities. They ought not to be allowed to screen themselves from the duty common to other similar bodies, upon the plea of poverty. Nor indeed would it be in our power to withhold the authority of this Court upon such ground, if made manifest. It is for the legislature to judge' upon such applications, if any partial relief can be constitutionally given.
Now it seems to us that' this law ought to be executed in every county, and the only question is, whether this Court can enforce it, by virtue of their general superintending power over all courts of inferior jurisdiction. And of this we entertain no doubt ; for besides the general authority given by St. 1782, c. 9, the second section expressly provides, that it “ shall have power to issue all writs of prohibition and mandarhus, according to the law of the land, to all courts of inferior judiciary powers, and all processes necessary to the furtherance of justice, and the regular execution of the laws.” The common law, in regard to this subject, is the law of the land, and it is very clear that the Court of King’s Bench’ might by mandamus compel the performance of duty by all inferior tribunals, whether that duly be of a judicial or ministerial nature. Bac. Abr. Mandamus, D and E ; Com. Dig. same title.[1]
“ Mandamus is a prerogative writ introduced to prevent disorder from a failure of justice and defect of police ; and therefore ought to be used on all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one.” Rex v. Barker, 3 Burr. 1267 ; S. C. 1 W. Bl. 352 ; Rex v. Windham, Cowp. 378.[2]
There being then an omission of duty on the part of the Court of Sessions, occasioned without doubt by their belief that it was discretionary with them whether to cause a house of correction to be built or not, and also by the liberty taken in other counties to neglect this provision of the laws, we feel bound to award a mandamus ; which might be per *446 emptory, as a rule to show cause has been served, and an answer filed which we deem insufficient; but as time will be required for them to proceed in the execution of this duty, and as further opportunity to answer may be reasonable, we grant the writ in the alternative, that is, to command them to cause to be erected within the county of Hampden a house of correction, or to show cause why they shall not have done it, at the next term of this Court in this county.[3]

 See Brander v. The Chesterfield Justices, 5 Call, 548.

 See 3 Bl. Com. 265, and notes by Chitty.

 The County Commissioners are liable for not providing a gaol, to a sheriff, who has been subjected to damages through want of it, or through a deficiency in it. Commissioners of Brown County v. Butler, 2 Ohio R. 348. The sheriff is, however, liable in the first instance for an escape, though it happen through defect in the gaol. Slemaker v. Marriott, 5 Gill & Johns. 406.